UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------X
IRINA MIKOLAENKO,

                        Plaintiff,

                                          16 Civ. 413 (DAB)
                                          <u>MEMORANDUM & ORDER</u>

          v.

NEW YORK UNIVERSITY, et al.,

                        Defendants.
--------------------------------------------X
DEBORAH A. BATTS, United States District Judge.

     Plaintiff Irina Mikolaenko filed suit against Defendants
New York University ("NYU"), NYU School of Medicine, NYU Langone
Medical Center,[1] and David Zagzag for discrimination on the basis
of sex and national origin, hostile work environment based on
sexual harassment and national origin, <u>quid pro quo</u> sexual
harassment, and retaliation, all under Title VII, the New York
State Human Rights Law ("NYSHRL"), and the New York City Human
Rights Law ("NYCHRL"). Defendants move to dismiss in part. For
the following reasons, Defendants' Motion to Dismiss is GRANTED
in part and DENIED in part.

---

[1] As discussed <u>infra</u> pp. 8-9, the relationship between and legal
capacity of NYU, NYU School of Medicine, and NYU Langone Medical
Center is disputed by the parties. Although the Court has
defined "NYU" to mean "New York University," because Plaintiff
also uses many of the terms interchangeably, the Court generally
refers to Plaintiff's employment with "NYU."

I.   BACKGROUND

Plaintiff is a female medical doctor, born in Eastern Ukraine and raised in the former Soviet Union. (Compl. ¶ 3.) She identifies as ethnic Russian and speaks Russian, Ukrainian, and English with a distinct Russian accent. (Id.) Plaintiff worked as an Assistant Clinical Professor in NYU's Pathology Department from 2008 until her termination on February 6, 2015. (Id. ¶¶ 19-20.) NYU is an educational and medical organization. (Id. ¶ 4.) NYU School of Medicine is a division of NYU and an educational institution focusing on medicine. (Id. ¶ 5.) NYU Langone Medical Center is an affiliate of NYU and NYU School of Medicine and is a healthcare, educational, and medical research institution. (Id. ¶ 6.) Dr. David Zagzag is the Chief of NYU's Division of Neuropathology and became Plaintiff's supervisor around 2012. (Id. ¶¶ 9, 22-24.) Defendant Zagzag allegedly had supervisory authority over Plaintiff with the "authority to undertake or recommend tangible employment decisions and/or control the terms and conditions of [her] employment with [NYU]." (Id. ¶ 9.)

A. Allegations Related to Sexual Harassment

Shortly after she began working for NYU, Plaintiff was allegedly warned that Defendant Zagzag was a "womanizer," that his lab was "sexually charged," and that he wanted female employees to wear sexually provocative clothes. (Id. ¶ 24.) She

2

was also told that he terminated a female employee several years earlier because that employee refused to engage in a sexual relationship with him. (Id.)

Around the time Plaintiff's former supervisor left NYU in 2012, Defendant Zagzag purportedly began to harass Plaintiff. (Id. ¶ 25.) He "made it be known" to Plaintiff that, if she did not have sex with him, she would receive poor reviews and be terminated. (Id. ¶ 26.) Thereafter he began to make inappropriate sexual comments to her and to proposition her for sex. (Id. ¶ 27.) For example, Defendant Zagzag would allegedly routinely tell Plaintiff that she looked "good" and "sexy" and that she has a "pretty face." (Id. ¶ 28.) He also complimented her hair, breasts, skin, fragrance, hands, and legs, especially if she wore a skirt to work. (Id.) Defendant Zagzag also regularly propositioned Plaintiff for sex and told her that her job security depended on sex. (Id.) Defendant Zagzag's alleged campaign of harassment was not solely verbal: he would also regularly press his body against Plaintiff's when discussing work issues. (Id.)

At "some point," Plaintiff, allegedly fearing that she would lose her job, relented to Defendant Zagzag's demands for sex and began an unwanted sexual relationship with him. (Id. ¶ 29.) The relationship, which lasted from early 2013 until mid-2014, allegedly included oral and anal sex and in Defendant

3

Zagzag masturbating on Plaintiff. (Id. ¶ 30-31.) On one occasion, on May 9, 2014, Defendant Zagzag ordered Plaintiff into the lab, knowing that the lab technicians would no longer be there. (Id. ¶ 32.) When she arrived, he demanded oral sex. (Id. ¶ 33.) On June 30, 2014, Defendant Zagzag again allegedly pressured Plaintiff into having sex with him and proceeded to masturbate on her and to subject her to painful, harsh, and aggressive sex. (Id. ¶ 35.) After that encounter, Plaintiff allegedly felt degraded, had a breakdown, and became extremely depressed. (Id. ¶ 36.)

Although Plaintiff attempted to avoid Defendant Zagzag after the June 30, 2014 encounter, he allegedly continued to harass her for sex. (Id. ¶¶ 37-39.) Several times beginning in August 2014, Defendant Zagzag entered Plaintiff's office, closed the door, touched her, tried to kiss her, exposed his genitals to her, and propositioned her for sex. (Id. ¶ 39.) When he entered Plaintiff's office, he would tell her about his erections and that, unless she has sex with him, she would get in trouble with the Department Chair, receive a negative performance review, and lose her job. (Id. ¶ 41.) Plaintiff feared that she would suffer professional consequences if she reported Defendant Zagzag's campaign of harassment. (Id. ¶ 42.) In late 2014 or early 2015, after Plaintiff's 2014 evaluation period had begun, Defendant Zagzag allegedly demanded oral sex

4

in Plaintiff's office and said that if she did not perform oral sex on him, she would receive a poor evaluation. (Id. ¶¶ 43-45.) He also allegedly demanded oral sex in Plaintiff's office at some point in January 2015. (Id. ¶ 46.)

In late January 2015, Plaintiff demanded that Defendant Zagzag cease his sexual advances and refused to have any sexual contact with him. (Id. ¶¶ 47-48.) Her employment with NYU was terminated roughly one week later on February 6, 2015. (Id. ¶¶ 20, 48.)

### B. Allegations Related to National Origin and Ethnicity Discrimination

Christina Baranetsky has been employed by NYU's Pathology Department in Dr. Cangiarella's office[2] since 2008. (Id. ¶ 50.) She is allegedly a Ukrainian nationalist supporter and loathed Plaintiff's Russian ethnicity and accent because of geopolitical conflicts between Ukraine and Russia. (Id.) On November 27, 2013, Baranetsky said that she hated "Russian Moskali"[3] and that she supported Ukrainian extremism. (Id. ¶ 51.) Baranetsky also

---

[2] Plaintiff does not explain who Dr. Cangiarella is or how his position related to hers.

[3] "Moskali" is a slur used by Ukrainians to insult Russians. See Jacques Bacic, Letter to the Editor, When Ukrainians Call Russians "Moskali", N.Y. Times, Nov. 26, 1992, http://www.nytimes.com/1992/11/26/opinion/l-when-ukrainians-call-russians-moskali-068092.html?mcubz=0; Moskal, Urban Dictionary, http://www.urbandictionary.com/define.php?term=Moskal.

purportedly fired other staff for "just disliking them for their Russian language." (Id. ¶ 52.)

In May 2012, Baranetsky allegedly requested that Plaintiff's office be moved for no legitimate reason. (Id. ¶ 54.) Plaintiff was then assigned to a noisy, small, closet-like windowless room with poor ventilation while her former office remained unoccupied. (Id. ¶ 54.) Allegedly because of Baranetsky's influence, Cangiarella's secretarial staff were unapproachable any time Plaintiff asked for assistance. (Id. ¶ 55.) Although Plaintiff allegedly complained to Cangiarella about Baranetsky, he did not resolve the conflict. (Id. ¶ 56.)

### C. Allegations Related to Sex Discrimination

Dr. Alfantis, the Pathology Department Chair,[4] allegedly favored his male colleagues, Defendant Zagzag and Dr. Snuderl,[5] and gave them more career-advancing opportunities than he did to Plaintiff. (Id. ¶ 57.) In January 2015, Alfantis referred to Plaintiff as "stupid" in an email, but he would allegedly not treat other colleagues, particularly male colleagues, in the same manner. (Id. ¶ 58.) He also allegedly routinely sent

---

[4] Plaintiff again does not explain who Dr. Alfantis is in her Complaint, but her EEOC charge, which is incorporated by reference in the Complaint, specifies his role. (Defs.' Mot. Dismiss, Ex. B ¶ 7.)

[5] Plaintiff again does not explain who Dr. Snuderl is or what his position was in relation to hers.

Plaintiff emails in the middle of the night, even though he would not email male colleagues in the middle of the night. (Id. ¶ 59.)

### D. Complaints, Termination, and Procedural History

On January 26, 2015, Plaintiff submitted a protected complaint to NYU Langone Medical Center alleging discrimination based on national origin, ethnicity, and gender only. (Id. ¶¶ 60-61.) Plaintiff was then terminated on February 6, 2015. (Id. ¶ 20.)

Plaintiff filed a charge with the Equal Opportunity Employment Commission ("EEOC") against Defendants on April 6, 2015[6] and received a Right to Sue letter on October 27, 2015. (Id. ¶ 14.) She filed the instant suit on January 19, 2016.

## II.  Discussion

### A. Legal Standard for Rule 12(b)(6) Motion to Dismiss

For a complaint to survive a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is

---

[6] Plaintiff's EEOC charge, which is incorporated by reference in the Complaint and is attached as Exhibit B to Defendants' Motion to Dismiss, largely mirrors the Complaint but contains fewer allegations related to Defendant Zagzag's alleged harassment of her and their unwanted sexual relationship. (See generally, Defs.' Mot. Dismiss, Ex. B.)

plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for
> the misconduct alleged. The plausibility standard is not
> akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted
> unlawfully. Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and
> plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,

550 U.S. at 556–57). "[A] plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." Twombly, 550 U.S. at 555 (internal

quotation marks and citation omitted). "Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly,

550 U.S. at 557). The Supreme Court further stated,

> In keeping with these principles a court considering a
> motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of
> truth. While legal conclusions can provide the framework
> of a complaint, they must be supported by factual
> allegations. When there are well-pleaded factual
> allegations, a court should assume their veracity and
> then determine whether they plausibly give rise to an
> entitlement to relief.

Id. at 679.

In considering a Rule 12(b)(6) motion, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). However, this principle is "inapplicable to legal conclusions," Iqbal, 556 U.S. at 678, which, like the complaint's "labels and conclusions," Twombly, 550 U.S. at 555, are disregarded. Nor should a court "accept [as] true a legal conclusion couched as a factual allegation." Id. In resolving a 12(b)(6) motion, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).[7]

---

[7] Defendants have attached many emails sent by Plaintiff as Exhibits C and D to their Motion to Dismiss. "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam). In this case, the emails Defendants seek to include are not incorporated by reference in the Complaint because the Complaint does not make "a clear, definite and substantial reference to the documents." Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003). Plaintiff references one email in which Dr. Alfantis referred to her as "stupid" in the

B. NYU Medical School and NYU Langone Medical Center

Defendants seek to dismiss all Counts as against NYU Medical Center and NYU Langone Medical Center on the grounds that they are not legal entities. Plaintiff seeks discovery to determine whether these two entities are amenable to suit.

Federal Rule of Civil Procedure 9(a)(1) provides that, "[e]xcept when required to show that the court has jurisdiction," a Complaint need not allege: "(A) a party's capacity to sue or be sued; (B) a party's authority to sue or be sued in a representative capacity; or (C) the legal existence of an organized association of persons that is made a party." To

---

Complaint and other emails he sent her generally. (Compl. ¶¶ 58-59). She does not refer to or rely upon the full chain of emails in the Complaint. Defendants do not cite to any case law reflecting something comparable to the "rule of completeness" regarding the introduction of correspondence that applies at the motion to dismiss stage, and the Court is not aware of any such doctrine. Rather, the emails are simply evidence to be considered by the fact finder in this case. The Court views Defendants' attempt to introduce the emails as a wholly improper attempt to undermine Plaintiff's credibility when, as Defendants' attorneys should know, such a determination is not made at the motion to dismiss stage. Further, Defendants' cited cases are factually inapposite. For example, in Kelly v. North Shore-Long Island Jewish Health System, 166 F. Supp. 3d 274 (E.D.N.Y. 2016), the Court allowed introduction of a letter that was specifically referenced in the complaint but explicitly excluded other correspondence that was neither integral to the complaint nor incorporated by reference in it. Id. at 284. Accordingly, the Court does not consider Exhibits C and D to Defendants' Motion to Dismiss. However, Exhibit B to the Motion to Dismiss, Plaintiff's EEOC charge, is incorporated by reference in the Complaint (Compl. ¶ 14) and relates to whether Plaintiff exhausted her administrative remedies with respect to various Counts in the Complaint.

10

raise any of those issues, a defendant "must do so by a specific denial, which must state any supporting facts that are peculiarly within [its] knowledge." Fed. R. Civ. P. 9(a)(2).

Here, Defendants have only set forward argument, not facts, that NYU Medical Center and NYU Langone Medical Center are not legal entities. These supporting facts, which could be submitted in the form of affidavits or other documentary evidence, are peculiarly within Defendants' control.

It may be proper, in certain circumstances, to dismiss against a defendant on the grounds that the defendant is not a legal entity. For example, in <u>Ellul v. Congregation of Christian Bros.</u>, No. 09 CIV. 10590 (PAC), 2011 WL 1085325 (S.D.N.Y. Mar. 23, 2011), <u>aff'd</u>, 774 F.3d 791 (2d Cir. 2014), the Court dismissed a complaint against a defendant who was not a legal entity only after the defendant introduced a declaration reflecting as much. <u>Id.</u> at *3. <u>See also</u> <u>Thompson v. Jam. Hosp. Med. Ctr.</u>, No. 13 CIV. 1896, 2016 WL 4556905, at *5-6 (S.D.N.Y. Aug. 30, 2016). In <u>Sculerati v. New York University</u>, No. 126439/02, 2003 WL 21262371 (N.Y. Sup. Ct. May 16, 2003), the Court dismissed as against "NYU Medical Center" and "NYU School of Medicine" on the grounds that the parties did not dispute whether or not they were not legal entities. <u>Id.</u> at *1 n.1.

Accordingly, at this time Plaintiff may proceed against NYU Medical Center and NYU Langone Medical Center on the Counts that remain.

### C. Individual Liability of Defendant Zagzag

Defendants also seek to dismiss all Counts as against Defendant Zagzag on the grounds that an individual cannot be held liable under Title VII and that Defendant Zagzag did not "aid and abet" discriminatory conduct within the meaning of NYSHRL or NYCHRL.

Defendants are correct that individuals are not subject to liability under Title VII, and Plaintiff does not oppose Defendants' Motion to Dismiss on this basis. See Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004). Accordingly, Plaintiff's federal claims (Counts I, IV, VII, X, XIII, and XVI) are DISMISSED as against Defendant Zagzag.[8]

### 1.   Individual Liability Under NYSHRL

Under NYSHRL, individuals can be held liable if they act as employers, N.Y. Exec. Law § 296(1), or if they "aid, abet,

---

[8] Defendants do not argue that NYU cannot be held liable for Defendant Zagzag's actions. Nonetheless, the Court notes that, under Title VII, an employer can be held liable for the discriminatory actions of an employee that serves in a supervisory role. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

incite, compel or coerce" discriminatory acts by employers. N.Y. Exec. Law. § 296(6).

An individual is an "employer" within the meaning of the NYSHRL if that individual has an "ownership interest or any power to do more than carry out personnel decisions made by others." Patrowich v. Chem. Bank, 63 N.Y.2d 541, 542 (N.Y. 1984). Some courts in the Second Circuit have applied the economic reality test,[9] developed in the context of the Fair Labor Standards Act, in determining whether an individual qualifies as an employer under the NYSHRL. See, e.g., Scalera v. Electrograph Sys., Inc., 848 F. Supp. 2d 352, 371 (E.D.N.Y. 2012). Here, Plaintiff has pled sufficient facts alleging that Defendant Zagzag was her employer. She alleges that he was her "immediate supervisor," that he had "authority to undertake or recommend tangible employment decisions," (Compl. ¶ 9), and that he had the power to give her performance reviews. (Id. ¶¶ 26, 41, 43.) Defendant Zagzag can thus be held individually liable under NYSHRL.

---

[9] In determining whether an individual counts as an employer, the economic reality test considers "whether the alleged employer possessed the power to control the workers in question." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). Under this test, "the relevant factors include whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (citations and quotations omitted).

2.    Individual Liability Under NYCHRL

The NYCHRL makes it is unlawful for "an employer or an employee or agent thereof" to engage in discriminatory employment practices. N.Y.C. Admin. Code § 8-107(1)(a). This provides a broader basis for individual liability than NYSHRL and can be used to hold an individual liable regardless of whether that individual qualifies as an employer or aids or abets discriminatory conduct. See Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012). Defendant Zagzag can thus be held individually liable under NYCHRL as either an employer or employee.

D. Whether Any of Plaintiff's Allegations Are Time Barred

In this case, Plaintiff filed her EEOC charge on April 6, 2015. Under Title VII, a plaintiff can generally only bring charges based on an employment practice that occurred within 300 days of the filing of an EEOC charge. 42 U.S.C. § 2000e-5(e)(1). 300 days before April 6, 2015 is June 9, 2014. Both the NYSHRL and NYCHRL contain a three year statute of limitations. See N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d). It is well established that the statutes of limitations for NYSHRL and NYCHRL are automatically tolled while a plaintiff has a claim pending with the EEOC. See DeNigris v. N.Y.C. Health & Hosps.

14

Corp., 861 F. Supp. 2d 185, 192 (S.D.N.Y. 2012). Three years prior to the filing of Plaintiff's EEOC charge is April 6, 2012.

Under Title VII, the Court can consider any actions occurring after June 9, 2014. There are several allegations in the Complaint that occurred before then. Plaintiff alleges that Defendant Zagzag began to harass her in 2012 and that her coerced sexual relationship with Defendant Zagzag began in early 2013 and ended in mid-2014 and specifically that he demanded oral sex from her on May 9, 2014. (Compl. ¶¶ 25, 31-33.) Plaintiff also alleges that Baranetsky used a Russian slur on November 27, 2013 and had Plaintiff's office moved in May 2012. (Id. ¶¶ 51, 54.) All of these acts occurred within the NYSHRL and NYCHRL statutes of limitations.[10]

Plaintiff argues that the Title VII statute of limitations should be extended under the continuous discrimination theory because of ongoing discriminatory practices.

1. Continuous Discrimination Doctrine

Title VII "precludes recovery for discrete acts of discrimination . . . that occur outside the statutory time period." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105

---

[10] It is unclear when in 2012 Defendant Zagzag began to harass Plaintiff. Any allegations occurring prior to April 6, 2012 may be time barred, but that issue is not before the Court at this time.

(2002). To avail herself of the continuous discrimination
doctrine and thus enlarge the statute of limitations period, an
employment discrimination plaintiff "must allege both the
existence of an ongoing policy of discrimination and some non-
time-barred acts taken in furtherance of that policy." Shomo v.
City of New York, 579 F.3d 176, 181 (2d Cir. 2009) (quoting
Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999)).
Alternatively, the plaintiff can demonstrate that "specific and
related instances of discrimination are permitted by the
employer to continue unremedied for so long as to amount to a
discriminatory policy or practice." Sullivan v. N.Y.C. Dep't of
Investigation, 163 F. Supp. 3d 89, 98 (S.D.N.Y. 2016) (quoting
Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994)).

     Hostile work environment claims, by their nature, involve
repeated, separate acts that "collectively constitute one
'unlawful employment practice.'" Morgan, 536 U.S. at 115, 117
(quoting 42 U.S.C. § 2000e-5(e)(1)). The Supreme Court has held
that "consideration of the entire scope of a hostile work
environment claim, including behavior alleged outside the
statutory time period, is permissible for the purposes of
assessing liability, so long as an act contributing to that
hostile environment takes place within the statutory time
period." Id. at 105. By contrast, discrete acts, even if related
to acts alleged within the statutory time frame, are time barred

if they take place outside of the limitations period. Id. at
113.

2. Application

With respect to Baranetsky's alleged discriminatory
actions, Plaintiff cannot avail herself of the continuous
discrimination doctrine for either her national origin/ethnicity
disparate treatment claim (Count IV) or her national
origin/ethnicity hostile work environment claim (Count XIII).
Regardless of whether there was some sort of continuing
violation, Plaintiff does not allege any actions that took place
within the limitations period. See id. at 105. The Court thus
cannot consider the allegations related to Baranetsky's actions,
so no allegations remain with respect to national
origin/ethnicity discrimination under Title VII. As such, Counts
IV and XIII are DISMISSED.

The remaining allegations at issue are that, generally,
Defendant Zagzag began to harass Plaintiff in 2012, Plaintiff's
coerced sexual relationship with Defendant Zagzag began in early
2013, and, specifically, that Defendant Zagzag demanded oral sex
from her on May 9, 2014. These allegations relate to Plaintiff's
sexual harassment/hostile work environment claim (Count VII) and
her quid pro quo claim (Count X). Hostile work environment
claims inherently involve repeated acts that, together,

17

constitute one employment practice. Morgan, 536 U.S. at 115, 117. Because other allegations related to the hostile work environment claim occurred within the statutory time limit, these particular allegations can also be considered for purposes of the Title VII sexual harassment/hostile work environment claim.

Plaintiff's quid pro quo claim is inherently related to her hostile work environment claim. And, for the purposes of the statute of limitations, the quid pro quo claims involved behavior that was permitted by NYU to "continue unremedied for so long as to amount to a discriminatory policy or practice." See Sullivan, 163 F. Supp. 3d at 98. Plaintiff was allegedly faced with the choice between having sex with Defendant Zagzag or receiving negative performance reviews and being terminated from her position at NYU. (See Compl. ¶ 26.) Thus, each ongoing incident where Defendant Zagzag allegedly pressured her to have sex with him was part of a larger quid pro quo harassment practice that continued for nearly a year and a half.[11] This

---

[11] The Second Circuit has held that "[t]he relevant inquiry in a quid pro quo case is whether the supervisor has linked tangible job benefits to the acceptance or rejection of sexual advances. It is enough to show that the supervisor used the employee's acceptance or rejection of his advances as the basis for a decision affecting the compensation, terms, conditions or privileges of the employee's job." Karibian v. Columbia Univ., 14 F.3d 773, 778 (2d Cir. 1994)

allegation is not an isolated occurrence. Plaintiff has included references to four other specific allegations where the same quid pro quo expectations were at issue. Accordingly, the Court holds that these allegations are not time barred for the purposes of Plaintiff's Title VII quid pro quo claim (Count X).[12]

> E. Whether Plaintiff Exhausted Her Administrative
> Remedies with Respect to Her Quid Pro Quo Claims

Defendant also moves to dismiss on the grounds that Plaintiff failed to exhaust her administrative remedies because she first included allegations of a quid pro quo sexual relationship in her Complaint and did not include related allegations in her EEOC charge.[13]

---

[12] Defendants also argue that Plaintiff cannot avail herself of the continuous violation doctrine because she did not name it in her EEOC charge. The administrative exhaustion requirements applicable to substantive claims in an employment discrimination complaint, see infra p. 15-16, are also applicable to the continuous discrimination theory. See Kleinman v. Fashion Inst. of Tech., No. 16 CIV. 4348 (KPF), 2017 WL 3016940, at *8 (S.D.N.Y. July 14, 2017). Plaintiff has satisfied this requirement with respect to the sexual harassment/hostile work environment and quid pro quo claims. See Johnson v. Trs. of Columbia Univ., No. 00 CIV. 8118 (WK) (RLE), 2003 WL 2013371, at *2 (S.D.N.Y. Apr. 25, 2003), report and recommendation adopted, 2003 WL 21433455 (S.D.N.Y. June 16, 2003) (plaintiff need not specifically articulate continuous discrimination theory in EEOC charge so long as that could be reasonably expected to grow out of the charge); Defs.' Mot. Dismiss, Ex. B ¶¶ 20-28.

[13] The Court construes this argument as applying only to Plaintiff's quid pro quo claims (Counts X, XI, and XII) and not her sex discrimination claims (Counts I, II, and III) despite Defendants' heading. (See Defs.' Mem. Law Supp. Mot. Dismiss at 5.) Defendants do not include any substantive arguments related

Prior to bringing suit in federal court under Title VII, a plaintiff must first exhaust her administrative remedies by presenting the claims that form the basis of her suit to the EEOC. See Littlejohn v. City of New York, 795 F.3d 297, 322 (2d Cir. 2015). Even if a claim was not first presented to the EEOC, a plaintiff may still pursue that claim if it is reasonably related to the claims that were raised before the EEOC. Id. "A claim is reasonably related to the filed claim 'if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" Littlejohn v. City of New York, 795 F.3d 297, 322 (2d Cir. 2015) (quoting Deravin v. Kerik, 335 F.3d 195, 200–01 (2d Cir. 2003). In determining relatedness, courts look to the factual allegations in the EEOC charge itself. Id. "[I]f the factual allegations in the EEOC charge 'suggest [two] forms of discrimination'— even though the charge itself specifies only one— so that the agency receives adequate notice to investigate discrimination on both bases, the claims are reasonably related to each other." Id. (second alteration in original) (quoting Deravin, 335 F.3d at 202).

---

to the sex discrimination claims, and Plaintiff includes nearly identical allegations in her Complaint and EEOC charge related to sex discrimination. (Compare Compl. ¶¶ 57-59 with Mot. Dismiss, Ex. B ¶¶ 17-19.)

In this case, even without using the label "quid pro quo"
Plaintiff includes a number of references to a quid pro quo
relationship in her EEOC charge. For example, the EEOC charge
references Defendant Zagzag's alleged termination of a female
employee who refused to have sex with him (Defs.' Mot. Dismiss,
Ex. B ¶ 21) and Defendant Zagzag's comment that Plaintiff's
position would be more "stable and secure" if she had sex with
him. (Id. ¶ 27.) Moreover, her quid pro quo allegations are
inherently intertwined with her sexual harassment allegations
such that the EEOC would receive adequate notice to investigate.
See Carrero v. N.Y.C. Hous. Auth., 890 F.2d 569, 579 (2d Cir.
1989) ("Hostile environment and quid pro quo harassment causes
of action are not always clearly distinct and separate. The
discrimination which gives rise to them is not neatly
compartmentalized but, as this case demonstrates, the two types
of claims may be complementary to one another."); Schiano v.
Quality Payroll Sys., Inc., 445 F.3d 597, 604 (2d Cir. 2006)
(allowing plaintiff to proceed on appeal with a quid pro quo
sexual harassment claim that was characterized as a hostile work
environment claim in the district court).[14]  Both involve

---

[14] The Second Circuit wrote:
  Because these terms are judicially created for
  analytical purposes, not distinctions in the statute
  itself, we think it is most appropriate, at least in the
  case before us, to look to the substance of the alleged
  misconduct of which the plaintiff complains rather than

unwanted sexual contact with Defendant Zagzag; the difference is whether or not Plaintiff might be terminated or otherwise have her job conditions altered. Accordingly, Plaintiff exhausted her administrative remedies.

    F. Plaintiff's Gender Discrimination Claims

    Defendants seek to dismiss Plaintiff's gender discrimination claims (Counts I, II, and III)[15] on the grounds that they do not meet the plausibility standard based on the difference in allegations between her emails, her EEOC charge, and the instant Complaint. As discussed <u>supra</u> p. 9 n.7, the Court will not consider the emails Defendants seek to introduce at this time. Defendants have not offered other arguments in support of their Motion to Dismiss the gender discrimination

---

    the terms used to describe it. If, for example, a plaintiff were to argue that she had been demoted for refusing to respond positively to her supervisor's sexual overtures, we would think that the assertion would preserve her quid pro quo claim even if she never used the phrase "quid pro quo" in the district court to describe it.
<u>Schiano</u>, 445 F.3d at 604.

[15] It is unclear to the Court which claims Defendants seek to dismiss when they refer the Plaintiff's gender discrimination claims. They may also be seeking to move with respect to the hostile work environment/sexual harassment claims (Counts VII, VIII, and IX) and the <u>quid pro quo</u> claims (Counts X, XI, and XII). Regardless, Defendants' Motion to Dismiss on this basis is DENIED.

claims. Accordingly, Defendants' Motion to Dismiss is DENIED with respect to these claims.

### G. Plaintiff's National Origin and Ethnicity Discrimination Claims

Defendants argue that Plaintiffs claims alleging discrimination on the basis of national origin/ethnicity fail as a matter of law because they are based on one discriminatory comment and because she did not suffer any adverse employment action. The Court construes these arguments as applying to Plaintiff's national origin/ethnicity discrimination disparate treatment claims (Counts IV, V, and VI) as well as to her hostile work environment claims based on national origin/ethnicity (Counts XIII, XIV, and XV). The Court has already held that the allegations related to national origin/ethnicity discrimination are time-barred under Title VII and has dismissed Counts IV and XIII on this basis. The Court thus does not address these claims. The Court now addresses Counts V, VI, XIV, and XV.

1.    Disparate Impact

a. New York State Human Rights Law – Count V

In making out a prima facie case of employment

discrimination under NYSHRL,[16] the plaintiff must show: "(1) that

she is a member of a protected class, (2) that she was qualified

for [employment in the position], (3) that she suffered an

adverse employment action, and (4) can sustain a <u>minimal</u> burden

of showing facts suggesting an inference of discriminatory

motivation . . . ." <u>Littlejohn</u>, 795 F.3d at 311. A plaintiff

need not make out a prima facie case at the motion to dismiss

stage, but she must give "plausible support" for the

requirements, including to "a minimal inference of

discriminatory motivation." <u>Id.</u> In meeting the burden to

establish an inference of discrimination at this stage, a

plaintiff can point to, among other things, "the employer's

criticism of the plaintiff's performance in ethnically degrading

terms; or its invidious comments about others in the employee's

protected group; or the more favorable treatment of employees

not in the protected group; or the sequence of events leading to

the plaintiff's discharge." <u>Id.</u> at 312 (quoting <u>Leibowitz v.</u>

<u>Cornell Univ.</u>, 584 F.3d 487, 502 (2d Cir. 2009)).

---

[16] The Second Circuit has noted that while the protections of
NYSHRL are coextensive with those of Title VII, the protections
of NYCHRL are broader. <u>See Mihalik v. Credit Agricole Cheuvreux</u>
<u>N. Am., Inc.</u>, 715 F.3d 102, 108-09 (2d Cir. 2013).

With respect to the third element of a prima facie case, the Second Circuit has written:

> A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (citations, alterations, and quotations omitted). "[V]erbal abuse is typically insufficient to constitute an 'adverse employment action' because 'negative or otherwise insulting statements are hardly even actions, let alone "adverse actions."'" Scott v. N.Y.C. Dep't of Correction, 641 F. Supp. 2d 211, 231 (S.D.N.Y. 2009) (alterations omitted) (quoting Blake v. Potter, No. 03 Civ. 7733 (LAP), 2007 WL 2815637, at *8 (S.D.N.Y. Sept. 25, 2007)), aff'd, 445 F. App'x 389 (2d Cir. 2011).

Because Baranetsky's words were not adverse actions, see id., the question here is whether moving Plaintiff to "a small closet-like room with no windows" and "poor ventilation" in a "very busy traffic area" constituted an adverse employment action. The Court finds that this action is a "mere inconvenience" rather than an adverse employment action. See Trachtenberg v. N.Y.C. Dep't of Educ., 937 F. Supp. 2d 460, 468

(S.D.N.Y. 2013) ("relocation of [plaintiff's] office to a
windowless, poorly ventilated room does not constitute an
adverse employment action"); Crawford-Bey v. N.Y. & Presbyterian
Hosp., No. 08 Civ. 5454 (RJS), 2011 WL 4530193, at *5-6
(S.D.N.Y. Sept. 30, 2011) (no adverse employment action where
plaintiff was assigned to "a small, windowless office" without
"proper ventilation [or] lighting and with a very offensive
smelling bathroom"); DeJesus v. Starr Tech. Risks Agency, Inc.,
No. 03 CIV 1298 (RJH), 2004 WL 2181403, at *12 (S.D.N.Y. Sept.
27, 2004) (plaintiff who was the only employee in his position
to work in a cubicle rather than an office did not suffer
adverse employment action); Staff v. Pall Corp., 233 F. Supp. 2d
516, 532 (S.D.N.Y. 2002), aff'd, 76 F. App'x 366 (2d Cir. 2003)
("Defendants' failure to provide Plaintiff with a private office
or subordinates does not, as a matter of law, constitute an
adverse employment action."). Courts addressing similar office
relocations are split on whether such an action constitutes an
adverse employment action. Most of the cases holding that an
office relocation was an adverse action, however, include
further allegations of adverse actions, not just moving an
employee's workspace. See Pellei v. Int'l Planned Parenthood
Fed'n/W. Hemisphere Region, Inc., No. 96 Civ. 7014, 1999 WL
787753 at *12-13 (S.D.N.Y. 1999) (reassignment to a "small,
poorly lit, isolated cubicle" was an adverse employment action

26

where plaintiff was also terminated and had responsibilities taken away from her); Hughes v. Xerox Corp., 37 F. Supp. 3d 629, 643 (W.D.N.Y. 2014) (writing that "[w]hile the simple relocation of Plaintiff's office or reassignment of different job duties would not rise to the level of a plausible adverse employment action, Plaintiff's allegations suggest that these actions were taken as part of a concerted effort to alter the terms and conditions of Plaintiff's employment by stagnating any opportunity for growth and represented a setback in her career," where plaintiff's office was reassigned, job duties were taken away, plaintiff was reported to human resources, and was required to take an anger management course); Scafidi v. Baldwin Union Free Sch. Dist., 295 F. Supp. 2d 235, 239 (E.D.N.Y. 2003) (holding that relocation to an office that "could be accessed only by a long flight of stairs" which aggravated plaintiff's disability, later reassignment to a storage room, assignment of extra work, and denial of access to clerical staff qualified as an adverse employment action); but see Myers v. N.Y.C. Human Rights Comm'n, No. 04 CIV. 00543 (JCF), 2006 WL 344754, at *11 (S.D.N.Y. Feb. 15, 2006) (assuming without deciding that transfer of office from ninth to tenth floor where it was isolated and had harsh lighting constituted adverse employment action but granting summary judgment for defendant on other grounds). Because there was no adverse employment action,

Plaintiff cannot make out a disparate treatment case for national origin/ethnicity discrimination under NYSHRL. Accordingly, Count V of the Complaint is DISMISSED.[17]

> b. New York City Human Rights Law – Count VI

NYCHRL is "broader and more remedial" than NYSHRL or Title VII. <u>Williams v. N.Y.C. Hous. Auth.</u>, 872 N.Y.S.2d 27, 38 (N.Y. App. Div. 1st Dep't 2009). Thus, under the NYCHRL, to make out a national origin/ethnicity discrimination claim, "the plaintiff need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of her [national origin/ethnicity].'" <u>Mihalik</u>, 715 F.3d at 110 (quoting <u>Williams</u>, 872 N.Y.S.2d at 39); <u>see also</u> <u>Carter v. Verizon</u>, No. 13 CIV. 7579 (KPF), 2015 WL 247344, at *5 (S.D.N.Y. Jan. 20, 2015) ("<u>Mihalik</u> arose in the context of a summary judgment motion, but its principles have been extended by the Second Circuit to motions to dismiss, albeit in non-precedential decisions."). Even under the more liberal standard, the NYCHRL is not a "general civility code," <u>Williams</u>, 872 N.Y.S.2d at 40 (quoting <u>Oncale v. Sundowner Offshore Servs.</u>, 523 U.S. 75, 81 (1998)), and "[t]he plaintiff still bears the burden of showing

---

[17] Although the Title VII national origin/ethnicity discrimination claim (Count IV) are time-barred, it is also insufficient for the same reasons as Count V.

that the conduct is caused by a discriminatory motive." Mihalik, 715 F.3d at 110.

Plaintiff has met this low burden here. She has alleged that Baranetsky treated her differently from other employees because she is Russian. (See Compl. ¶¶ 50-56.) Defendants' Motion to Dismiss with respect to Count VI is therefore DENIED.

### 2.    Hostile Work Environment

#### a. New York State Human Rights Law – Count XIV

Hostile work environments that are "sufficiently severe or pervasive to alter the conditions of the victim's employment" are actionable under the NYSHRL. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986) (alterations, citations, and quotations omitted); see also Pucino v. Verizon Wireless Commc'ns, Inc., 618 F.3d 112, 117 n.2 (2d Cir. 2010) (applying same standard to NYSHRL hostile work environment claim as to Title VII hostile work environment claim). The conduct must be both objectively hostile, in that a reasonable person would find the environment to be abusive, and subjectively hostile, in that the plaintiff actually perceived it to be abusive. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993); see also Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) ("To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the

complained of conduct: (1) 'is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.'") (alterations omitted) (quoting <u>Gregory v. Daly</u>, 243 F.3d 687, 691–92 (2d Cir. 2001)).

To determine whether a work environment is hostile, a court must look to the surrounding circumstances including:

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

<u>Harris</u>, 510 U.S. at 23.

To survive a Rule 12(b)(6) motion to dismiss, a hostile work environment plaintiff "need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" <u>Patane</u>, 508 F.3d at 113 (alteration in original) (quoting <u>Terry v. Ashcroft</u>, 336 F.3d 128, 148 (2d Cir. 2003)).

While this burden is relatively low, Plaintiff has failed
to meet it. "Isolated incidents generally will not suffice to
establish a hostile work environment unless they are
extraordinarily severe." Kaytor v. Elec. Boat Corp., 609 F.3d
537, 547 (2d Cir. 2010); see also Schwapp v. Town of Avon, 118
F.3d 106, 110 (2d Cir. 1997) ("For racist comments, slurs, and
jokes to constitute a hostile work environment, there must be
more than a few isolated incidents of racial enmity, meaning
that instead of sporadic racial slurs, there must be a steady
barrage of opprobrious racial comments.") (alterations,
quotations, and citations omitted). Plaintiff has made general
allegations about Baranetsky's hostility toward Russians (e.g.,
Compl. ¶ 53) but has only alleged one particular incident where
Baranetsky made an anti-Russian comment to her. (Compl. ¶ 51.)
The comment was not extraordinarily severe, nor has Plaintiff
alleged that the overall environment was sufficiently severe and
pervasive so as to constitute a hostile work environment. See
Varughese v. Mount Sinai Med. Ctr., No. 15-1328, 2017 WL
2889483, at *1 (2d Cir. July 7, 2017) (holding that, where
supervisor made derogatory comments roughly four times over the
course of three years, conduct was not severe and pervasive);
Sanchez Day v. N.Y.C. Dep't of Consumer Affairs, No. 10 CIV.
4888 (RWS), 2016 WL 1070843, at *5 (S.D.N.Y. Mar. 15, 2016)
(using slur two to four times in eighteen-month period did not

amount to hostile work environment). Thus, Count XIV of the
Complaint is DISMISSED.[18]

                        b. New York City Human Rights Law – Count XV

Courts have applied largely the same standard to hostile
work environment claims under NYCHRL as they have to disparate
impact claims under NYCHRL. Again, a plaintiff need only allege
that she was treated less well because of her national origin or
ethnicity. See Mihalik, 715 F.3d at 110; Williams, 872 N.Y.S.2d
at 39. While a defendant can avoid liability for petty slights
and trivial inconveniences, the hostile work environment
allegations do not need to rise to the level of severe or
pervasive to establish liability under NYCHRL. See Mihalik, 715
F.3d at 110.

For the same reasons Plaintiff's claim in Count VI
survives, Plaintiff's claim in Count XV for hostile work
environment based on national origin/ethnicity survives
Defendants' Motion to Dismiss. As with the disparate treatment
claim, Plaintiff alleges that she was treated worse because she
is Russian. The Court is not prepared to say at this early stage
that Baranetsky's alleged conduct, and NYU's alleged tolerance

_____

[18] Although the Title VII national origin/ethnicity
discrimination hostile work environment claim (Count XIII) is
time-barred, it is also insufficient for the same reasons as
Count XIV.

of it, amounts only to a petty slight or trivial inconvenience.
Accordingly, Plaintiff's Motion to Dismiss Count XV is DENIED.
Cf. Lenart v. Coach, Inc., 131 F. Supp. 3d 61, 69 (S.D.N.Y.
2015) (dismissing Title VII and NYSHRL hostile work environment
claims while denying motion to dismiss with respect to NYCHRL
hostile works environment claim).

### H. Leave to Amend

In summary, the following Counts remain:

- Sex discrimination: Count I (Title VII, against NYU
  Defendants), Count II (NYSHRL), and Count III (NYCHRL)

- National origin/ethnicity disparate treatment: Count VI
  (NYCHRL)

- Hostile work environment/sexual harassment: Count VII
  (Title VII, against NYU Defendants), Count VII (NYSHRL),
  and Count IX (NYCHRL)

- Quid pro quo sexual harassment: Count X (Title VII, against
  NYU Defendants), Count XI (NYSHRL), and Count XII (NYCHRL)

- Hostile work environment/national origin/ethnicity: Count
  XV (NYCHRL)

- Retaliation: Count XVI (Title VII, against NYU Defendants),
  Count XVII (NYSHRL), and Count XVIII (NYCHRL).

The Court has dismissed the following Counts:

- National origin/ethnicity disparate impact: Count IV (Title
  VII; time-barred) and Count V (NYSHRL; insufficient as a
  matter of law)

- Hostile work environment/national origin/ethnicity: Count
  XIII (Title VII; time-barred) and Count XIV (NYSHRL;
  insufficient as a matter of law).

33

The remaining question is whether Plaintiff shall be given leave to replead with respect to any of the dismissed claims. When a complaint has been dismissed, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). However, a court may dismiss without leave to amend when amendment would be "futile," or would not survive a motion to dismiss. Hutchison v. Deutsche Bank Sec. Inc., 647 F.3d 479, 491 (2d Cir. 2011).

It would be futile for Plaintiff to amend her claims in Counts IV and XIII because they are time-barred. Thus, leave to amend is DENIED with respect to Counts IV and XIII. It is not likely that Plaintiff has additional facts to allege that would cure the problems that caused the dismissal of Counts V and XIV under the NYSHRL. Additionally, Counts VI and XV under the NYCHRL have survived. Thus, justice does not require that Plaintiff be granted leave to amend Counts V and XIV. Accordingly, leave to amend is also DENIED with respect to Counts V and XIV.

III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

Defendants are to answer the remaining Counts within 30 days of the date of this Order.

SO ORDERED.

DATED:    New York, NY
          September 7, 2017

Deborah A. Batts
United States District Judge